UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JUDY HERZBERG, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:08-CV-0216 |
| | ) | |
| v. | ) | |
| | ) | |
| BEAUTY SYSTEMS GROUP LLC d/b/a COSMOPROF | ) ) | |
| | ) | Chief Judge Curtis L. Collier |
| Defendant. | ) | |

## MEMORANDUM

Before the Court is the motion for summary judgment filed by Defendant Beauty Systems Group LLC ("BSG") (Court File No. 30). Plaintiff Judy Herzberg ("Plaintiff") responded (Court File No. 33)[1] and BSG replied (Court File No. 35). Defendant subsequently filed a motion to strike the affidavit of Robin Mayo (Court File No. 34) and Plaintiff filed a response (Court File No. 37), to which Defendant has replied (Court File No. 38). For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment (Court File No. 30); and will **GRANT IN PART** Defendant's motion to strike the affidavit of Robin Mayo (Court File No. 33-5 ¶¶ 2,7,8) and will **DENY IN PART** Defendant's motion to strike as to the remaining paragraphs of Ms. Mayo's affidavit (Court File No. 34).

**I.     RELEVANT FACTS**

---

[1] Defendant contends Plaintiff's Response in Opposition was untimely. Plaintiff's response was filed in a timely manner pursuant to Fed. R. Civ. P. 6(d).

Plaintiff, age 48, began her employment with BSG as a store manager in February 1997.[2] Her duties included supervising store clerks, providing customer service, opening and closing the store, handling the store's cash and making bank deposits. As a store manager, she reported directly to a district manager, who in turn, reported to a territory manager. In 2003, BSG opened store number 6146 on Lee Highway in Chattanooga, Tennessee. Part of Plaintiff's store manager duties was to make bank deposits at the Bank of America on Gunbarrel Road. There are two ways to drive to the bank from the Chattanooga store location and depending on the time of day, the shorter route could have more traffic and take longer to drive. When Plaintiff asked her then territory manager, Joe Krimmer ("Krimmer"), whether she should go the shorter distance or faster route that was longer in distance, Krimmer told her she should use both routes and record the average of the distance on her mileage expense forms for simplicity purposes (Court File No. 33-1 "Herzberg Aff." ¶ 7). Plaintiff continued reporting her bank mileage in this manner until she became aware that the corporate policy required a more detailed recording method in January 2008. Plaintiff's method of reporting mileage was never questioned over the years and Defendant routinely sent corporate auditors to review all expenses in the stores including mileage expense forms (Court File No. 32-2 "Wilson Dep." pp. 34-35, Court File No. 32-3 "Austin Dep." p. 40).

In December 2007, Richard Wilson ("Wilson") transferred in to the position of Plaintiff's district manager and direct supervisor. On January 14, 2008, Faith Stemke, BSG's Manager of Store Operations asked Wilson to investigate the high payouts for mileage reimbursements for Plaintiff's store. This same day, Plaintiff received a call from Wilson, informing her she was on a list for high

---

[2] During much of Plaintiff's employment, her employer was actually Heil, Inc. This company was purchased by Defendants.

mileage expenses during the last quarter of 2007, and requesting documentation regarding the mileage expenses incurred from October through December 2007. Plaintiff promptly complied with this request. When questioned by Wilson about her failure to include beginning and ending mileage on the expense reports, Plaintiff explained she had been instructed by Krimmer to average the two routes and record the same number for each trip. Wilson also questioned Plaintiff about the entries regarding mileage for salon visits. Plaintiff explained her former district manager required her to make salon visits two to three times a month. During the last quarter of 2007, Plaintiff was required to make several trips to other stores and that accounted for a large portion of the mileage expenses.

On January 25, 2008, Plaintiff received a voicemail from Wilson indicating in the future she should always take the shortest route to the bank and record beginning and ending odometer mileage for every trip (Herzberg Aff. ¶ 15). Plaintiff complied and continued to record her mileage in this manner up until her termination on March 24, 2008.

Plaintiff noticed Wilson's age-related bias through comments made between January and March 2008 (Court File No. 33, p. 5). In the beginning of January 2008, when Wilson first visited Plaintiff's store, he commented "it looks pretty good for an oldtimer" (Court File No. 32-1 "Herzberg Dep." pp. 146-147). A customer spoke with Plaintiff and commented on how well the store looked, to which Wilson added "yeah, she does pretty well for an old woman" (Herzberg Aff. ¶ 10). Later in January 2008, during a managers' meeting with all the store managers in the district, Wilson gave a speech on insubordination and made the comment, "there are a few of you that have been around too long and need to move on" (Herzberg Dep. p. 151). On February 7, 2008, when Plaintiff asked Wilson for help in resolving a problem with two of her employees, he suggested she talk to them as "they're young, so they should be much easier to control" (Herzberg Aff. ¶ 18).

Later that day, she overheard Wilson on the telephone saying "this store and a couple others I have need a younger, fresher management style" and "sometimes when people have been around for so long they just need to move on" (Herzberg Dep. p. 158).

Plaintiff's co-worker, Robin Mayo ("Mayo"), is also a store manager and was present at the managers' meeting and heard Wilson's comment about those who "have been around too long and need to move on" (Court File No. 33-5 "Mayo Aff." ¶ 3).[3] She also was told by Wilson that

---

[3] Defendant has moved to strike the affidavit of Mayo (Court File No. 34) and Plaintiff responded to that motion (Court File No. 37). The Court has considered these motions in its review of the record. Affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P.56(e). "An affidavit that does not satisfy the requirements of Rule 56(e) is subject to a motion to strike." *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp.2d 948, 954 (S.D. Ohio 2000); (citing *Collazos Cruz v. United States*, No. 96-5452, 1997 WL 377037 at *2 (6th Cir. July 3, 1997). The assertions contained in Mayo's affidavit are in part based on personal knowledge and in part based on speculation or opinion.

The sections of Mayo's affidavit utilized by the Court in reaching its decision are only those sections that contain facts that would be admissible evidence pursuant to Fed. R. Civ. P. 56 (e). Defendant cites *Dole v. Elliott Travel & Tours, Inc*. for the proposition that the affidavit shall be disregarded if it does not comply with all the requirements of Fed.R.Civ.P. 56(e). 942 F.2d 962, 68-69 (6th Cir. 1991) (Court File No. 34, p. 1). Unlike the affidavit in *Dole*, Mayo's affidavit is sworn and not entirely comprised of inadmissible hearsay. While many portions of Mayo's affidavit contain conclusions of law, speculation or opinion testimony, the Court disregards these portions in ruling on the motion for summary judgment. However, portions containing facts that would lead to admissible evidence and are within Mayo's personal knowledge upon which affiant is competent to testify, may be considered by the Court in ruling on Defendant's summary judgment pursuant to Fed.R.Civ.P. 56(e).

When resolving a motion to strike, a Court should use a "scalpel, not a butcher's knife . . . strik[ing] portions of affidavits that do not satisfy the requirements of Rule 56(e)." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (citing *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007). The only paragraphs that are inadmissible in their entirety are paragraphs 2, 7, and 8 of Mayo's affidavit. The Court will not strike the entire affidavit simply because some of the content is inadmissible. Most paragraphs in the affidavit contain admissible evidence intertwined with inadmissible statements. The Court in this case will use the "scalpel" and grant Defendant's motion to strike as to paragraphs 2,7, and 8 but will deny Defendant's motion as to the other paragraphs.

4

"younger employees" are "easier to keep in check" and she should try to hire younger people (Mayo Aff. ¶ 4).

On January 23, 2008, Plaintiff telephoned Mike Hatchell ("Hatchell") in the Human Resources Department ("HR") and told him she was experiencing problems with Wilson and he had made several comments about her age. She also told him about the mileage report forms and expressed concern Wilson may try to fabricate a reason to terminate her because of her age. Plaintiff also contacted her territory manager, Ed Austin ("Austin"), to report the age discrimination but did not receive a call back. She left multiple voicemails for Austin explaining the discrimination and harassment. On January 28 and 31, Plaintiff left additional messages for Hatchell explaining she had not heard back from Austin. Austin, as of the date of his deposition, had not checked his voicemails in the past two years (Austin Dep. pp. 57-58).

On February 28, 2008, Wilson told Plaintiff to stop calling Austin and HR trying to get him in trouble and informed her this was a verbal warning. Later that day, Wilson sent a district wide voicemail to all managers giving a verbal warning if anyone was trying to get him in trouble by going to Austin or HR they would be subjected to further corrective action including termination (Herzberg Aff. ¶¶ 19-21). Plaintiff responded to Wilson leaving him a message that she believed he was unfairly targeting her for this situation because of her age (Herzberg Dep. pp. 270-71). On March 5, 2008, Plaintiff left another message for Hatchell indicating she believed Wilson was retaliating against her for reporting the age discrimination (Herzberg Aff. ¶ 22). Plaintiff did not receive a call back.

On March 24, 2008, Wilson and Austin met with Plaintiff and informed her she was being terminated for falsification of company records, specifically, falsification of mileage records. BSG's

5

Employee Handbook contains a list of terminable offenses, which includes falsification of company records and this was in effect from 2005 until the time of Plaintiff's termination. BSG subsequently placed Dana Hood, a 24 year old female in the manager position previously held by Plaintiff. Defendant asserts the bank mileage reports were the reason for Plaintiff's termination (Court File No. 31) but Plaintiff asserts she was terminated because of her age (Court File No. 33).

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. DISCUSSION

Plaintiff alleges age-based discrimination claims for wrongful termination, hostile work environment, and retaliatory discharge in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101, *et seq.* (Court File No. 1). Both parties agree claims under the THRA are analyzed according to the same standards under the Federal Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§ 621, *et seq*. The Tennessee legislature has made it clear the purpose of the THRA is to "[p]rovide for execution within Tennessee of the policies embodied in the Federal Civil Rights Acts." Tenn. Code Ann. § 4-21-101(a). Thus, the Court will analyze the claims under federal law. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006) (applying the same analysis to an age-discrimination claim brought under the Tennessee Human Rights Act as the ADEA); *Newman v. Fed. Express Corp.* 266 F.3d 401, 406 (6th Cir. 2001) ("Tennessee courts have 'looked to federal case law applying the provisions of the federal anti-discrimination statutes as the baseline for interpreting and applying' the Tennessee Human Rights Act.") (quoting *Graves v. Circuit City Stores, Inc.*, No. 03A01-9501-CH-0012, 1995 WL 371659, at *2 (Tenn Ct. App. June 21, 1995)).

#### A. Wrongful Termination

The ADEA makes it unlawful for employers to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA was

7

"prompted by [Congress's] concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). Similarly, the THRA provides in pertinent part that "it is a discriminatory practice for an employer to discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin." Tenn. Code Ann. § 4-21-401.

An employee can establish discrimination by direct or circumstantial evidence. Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Plaintiff asserts she has submitted direct evidence of age bias on the part of the decisionmaker by Wilson's statement the store need a "younger fresher management style," a statement telling Mayo she should "hire younger employees because they are easier to keep in check," a similar comment to Plaintiff regarding her own employees, and his comment at the managers meeting "there are a few of you that have been around too long and they need to move on" (Court File No. 33). Direct evidence would be comparable to Wilson's statement that he is firing Plaintiff because of her age. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) ("Such evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'"). Although Wilson's statements may be direct evidence of a bias against older employees, an inference is required to connect them to the decision to end Plaintiff's employment. *Blair v. Henry Filters, Inc.*, 505 F.3d 517 at 524-25 (6th Cir. 2007). Thus, the statements do not constitute direct evidence Defendant discharged Plaintiff based on her age.

Circumstantial evidence may be used to demonstrate age discrimination under the

8

*McDonnell Douglas* burden-shifting framework. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008). Under this analysis, Plaintiff must show "1) she was a member of the protected class, 2) she was subject to an adverse employment action, 3) she was qualified for the position, and 4) she was replaced by someone outside the protected class." *Id.* Defendant does not dispute Plaintiff has established a prima facie case for wrongful termination. Plaintiff is above the age of 40, she was terminated from her employment, was qualified for the position having been employed since 1997, and she was replaced by a 24 year old woman. Plaintiff has thus established a prima facie case of age discrimination.

The burden then shifts to Defendant to proffer a "legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Defendant meets this burden by asserting Plaintiff was terminated because she inaccurately reported her mileage for bank trips, this constituted falsification of company records, a terminable offense pursuant to BSG's Employee Handbook. Because Defendant meets this burden, the presumption of discrimination created by the prima facie case falls away and Plaintiff must show Defendant's legitimate nondiscriminatory reason was merely a pretext for discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414-415 (6th Cir. 2004).

To establish the Defendant's reason was pretext, Plaintiff must generally show "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Blair*, 505 F.3d at 532 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)) (internal quotation marks omitted). Plaintiff uses the second method to assert Defendant used the mileage reports to mask the real reason she was being terminated, her age. "On a motion for summary

9

judgment, the plaintiff need not totally refute the defendant's assertions as to its reasons for its actions, but must present some evidence, whether direct or circumstantial, which is sufficient to create a genuine issue of material fact as to the motivations of the defendant." *Dennis v. White Way Cleaners, L.P.*, 119 S.W. 3d 688, 694 (Tenn Ct. App. 2003). The Sixth Circuit has recognized that once an employment discrimination plaintiff has met her prima facie case "very little additional evidence is required to raise a genuine issue of fact regarding motive." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004) (citing *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985)).

Viewing the evidence in the light most favorable to Plaintiff, Defendant's reason for terminating Plaintiff, the falsification of mileage reports for bank trips, could be viewed as pretext. Although Wilson's investigation into Plaintiff's mileage reports was authorized by Stemke, the high travel expenses were not due to bank visits but instead due to the increased number of salon visits required by Plaintiff's former district manager. These salon visits were not identified as reasons for Plaintiff's termination. Furthermore, Plaintiff's method of completing bank mileage reports had been consistent for years and was never questioned by other members of management. Wilson spoke with Plaintiff regarding the problem with her mileage reports on January 24, 2008, and Plaintiff immediately began completing the bank mileage forms as directed.

Wilson made age-biased comments in January and February, leading to Plaintiff's multiple complaints to Hatchell and Austin. Wilson warned Plaintiff on February 28, 2008, to stop trying to report him to Austin and Human Resources. Plaintiff left a voicemail for Wilson indicating she felt she was being unfairly targeted because of her age. Receiving no response, Plaintiff made another complaint to Hatchell on March 5, 2008, and was terminated on March 24, 2008, at the

10

recommendation of Wilson. This sequence of events could lead a reasonable jury to infer Defendant's proffered reason was pretext and the circumstantial evidence offered by Plaintiff could indicate Plaintiff was singled out for her age.

Plaintiff has presented sufficient evidence to raise an issue of fact as to the motivation for her termination. Since Plaintiff has adequately established pretext, summary judgment is not appropriate for her wrongful termination claim.

### B. Retaliation

The THRA provides:

> [i]t is a discriminatory practice for a person or for two (2) or more persons to [r]etaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter.

Tenn. Code. Ann. § 4-21-301.

If a plaintiff's claims for retaliation are based on circumstantial evidence, the Sixth Circuit has held the *McDonnell Douglas* burden-shifting analysis applies. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). To establish a prima facie case for retaliation, Plaintiff must prove (1) she engaged in statutorily protected activity; (2) BSG had knowledge of her protected conduct; (3) BSG took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). Defendant only disputes the "causal connection" requirement of Plaintiff's prima facie case.

For Plaintiff to show a causal connection, she "must produce sufficient evidence from which

11

an inference can be drawn that the adverse action would not have been taken" had the plaintiff not engaged in the protected conduct. *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). Plaintiff made numerous complaints to Hatchell and Austin informing them she felt she was being discriminated because of her age. She received no response from these complaints. On February 28, 2008, Wilson confronted her and warned her she was not to call HR or Austin to report him. Plaintiff left a voicemail for Wilson telling him she felt he was unfairly targeting her because of her age. Later that same day, Wilson sent a voicemail to all managers in his district, warning them complaints made about him would be met with corrective actions including termination. On March 5, 2008, Plaintiff contacted Hatchell to report her concern Wilson was retaliating against her for reporting age discrimination. Plaintiff did not receive a call back from Hatchell and was terminated on March 24, 2008, pursuant to Wilson's recommendation.

Defendant contends temporal proximity is insufficient to support a causal connection, especially in cases where the plaintiff's protected conduct occurred after their termination was set in motion. "[T]he Sixth Circuit has not established a black letter rule regarding the role of temporal proximity in establishing the causation prong of a prima facie retaliation case." *Sanford v. Main Street Baptist Church Manor, Inc.*, Nos. 07-5869, 07-5905, 2009 WL 1410994 at *12 (6th Cir. May 20, 2009). However, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006). Plaintiff has asserted more than temporal proximity in support of the causal connection. Plaintiff buttresses her claim of temporal proximity with the verbal warning from Wilson on February 28, 2008, and Wilson's response to Plaintiff's confrontation with

12

a corporate voicemail threatening possible termination if discriminatory conduct was reported. These facts combined with the temporal proximity between her complaints to HR in February ending with her last complaint to Hatchell on March 5, 2008 and her subsequent termination on March 24, 2008, present sufficient causal connection to withstand summary judgment.

Defendant cites *McElroy v. Phillips* in support of the proposition that a causal connection is not established by temporal proximity if the protected conduct occurs after the termination is in motion. 127 F. App'x 161, 171 (6th Cir. 2005). However, in *McElroy*, the plaintiff was aware of his pending discharge from employment before he engaged in the protected conduct. *Id.* ("[Plaintiff] maintained that his discharge was both contemplated and had been set in motion before he filed the original complaint alleging the state law claims of discrimination."). Defendant argues because the investigation of the mileage reports had already occurred by the time Plaintiff made her first complaint to Hatchell on January 23, 2008, there can be no inference of a retaliatory motive. Unlike *McElroy*, Plaintiff was not aware of a pending discharge based on the mileage reports at the time she engaged in protected conduct. By contrast, Plaintiff corrected the problem with the mileage reports and continued in her position without knowledge of a pending discharge. Plaintiff was only told she had incorrectly completed her mileage reports, not that she was facing termination. Defendant concedes the decision to terminate Plaintiff took several weeks because of steps involved. Thus, many of Plaintiff's complaints to Hatchell and Austin, occurring on January 23, 28, and 31, within days of Wilson's first discussion with Plaintiff about the reports, most likely would have occurred before the termination had actually been set in motion.

Viewing the evidence in the light most favorably to the Plaintiff, the Court finds Plaintiff has presented sufficient facts to establish a causal connection. Because Plaintiff establishes the prima

13

facie case, the burden of production shifts to BSG to articulate a legitimate, non-retaliatory explanation for the action. As discussed above, Defendant satisfies this burden by asserting Plaintiff's inaccurate reporting on her mileage reports as the reason for her termination.

Because Defendant has asserted a legitimate, non-retaliatory explanation for Plaintiff's termination, Plaintiff must respond by showing Defendant's proffered reason was pretext for retaliation. *See Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). The means of establishing pretext are the same as under the wrongful termination analysis. Plaintiff again relies on the second method and asserts the proffered reason for termination did not actually motivate her discharge. Plaintiff argues the real motivation for her termination was not in fact, the mileage reports, but instead was retaliation for her complaints to HR and Austin about Wilson's age discrimination.

Plaintiff has alleged sufficient facts for a factfinder to determine BSG's proffered reason was pretextual. Wilson began an initial investigation of Plaintiff's mileage reports on January 14, 2008. Although Defendant asserts these bank mileage reports as the only reason for her termination, her discharge did not occur until March 24, 2008. In between the initial investigation and the final decision to terminate Plaintiff, Plaintiff contacted her HR department and Austin to report age-biased comments and problems with Wilson. Furthermore, Defendant specifically warned Plaintiff to stop contacting HR to complain about him and followed this warning with a company-wide voicemail threatening adverse action if employees reported him to HR. Plaintiff contacted Hatchell after this voicemail on March 5, 2008, and was subsequently terminated a few weeks later on March 24, 2008. Plaintiff has alleged sufficient facts that a reasonable factfinder could find Defendant's reason for terminating Plaintiff based on the mileage reports was pretextual.

14

Plaintiff has demonstrated a genuine issue as to the material facts supporting her termination, which is sufficient, at this stage, to call into question whether the proffered basis for Plaintiff's termination actually motivated the decision. Since Plaintiff has shown a genuine issue as to material facts regarding whether Defendant's legitimate, non-discriminatory reason for her termination is pretext, summary judgment in favor of Defendant is not appropriate as to Plaintiff's retaliation claim.

### C. Hostile Work Environment

Plaintiff alleges violation of the THRA due to a hostile work environment. To establish an age-based hostile work environment claim under THRA, Plaintiff must show: (1) she is over forty years of age; (2) she was subjected to harassment, either through words or action, based on age; (3) the harassment has the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile or offensive work environment; and (4) there is some basis for holding BSG liable. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-835 (6th Cir. 1996).

A work environment is hostile when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir. 2000) (citing *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)). Defendant argues Plaintiff has failed to present evidence sufficient to establish the second and third elements of the prima facie case.

In support of Plaintiff's claim for harassment, Plaintiff points to the age-biased comments of Wilson. "[T]he issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether-taken together-the reported

15

incidents make out such a case." *Bowman*, 220 F.3d at 463 (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). Isolated incidents alone must be extremely serious to serve as a basis for liability. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000). Wilson's comments Plaintiff "does pretty well for an old woman" or the store looked "pretty good for an oldtimer" do not rise to the level of harassment contemplated by a hostile work environment claim. *See Breeding v. Arthur J. Gallagher and Co.*, 164 F.3d 1151, 1159 (8th Cir. 1999) ("[Plaintiff] felt she was unfairly criticized and often yelled at, but these conditions, while not desirable, do not amount to actionable harassment on the basis of age."). These comments are even less actionable than the harassment in *Breeding*, as they were expressed in a complimentary form. Similarly, Wilson telling Plaintiff her "employees are young and easier to control" or his comment at the managers meeting "there are a few of you that have been around too long and they need to move on" are not sufficiently targeted at Plaintiff to constitute harassment under the second element of a prima facie case. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]poradic use of abusive language, gender-related jokes, and occasional teasing" are "the ordinary tribulations of the workplace," and as such they do not amount to actionable harassment.). The comments made in Plaintiff's presence and the few that were directed at Plaintiff, although subjectively harassing, would not meet the objective standard necessary as a reasonable person would not find these comments hostile or abusive.

Even assuming Plaintiff satisfied the level of harassment required for the second element, Plaintiff has not alleged sufficient facts that the harassment was severe or pervasive to satisfy the third element. When determining whether a work environment is hostile or abusive, courts assess the totality of the circumstances. *Harris*, 510 U.S. at 23. Relevant factors include "the frequency

16

of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* The Court "evaluate[s] the conduct at issue by both an objective and subjective standard." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (citing *Harris*, 510 U.S. at 21-22). The objective and subjective evaluation "requires a plaintiff to establish both that the harassing behavior was 'severe or pervasive' enough to create an environment that a reasonable person would find objectively hostile or abusive, and that he or she subjectively regarded the environment as abusive." *Id.* (citing *Harris*, 510 U.S. at 21-22).

Plaintiff has alleged the transfer of Wilson as a direct supervisor, his age-biased comments evidencing a hostility toward Plaintiff, heightened scrutiny ensuing from her mileage reports, and the necessity of making numerous reports of discrimination suffice to demonstrate a hostile or abusive work environment. Applying the factors from *Harris*, these would not constitute a hostile work environment. Although Wilson made multiple comments that could be interpreted as reflecting an age-bias, they were infrequent and isolated incidents. *See*, *Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) (reasoning three incidents over a six month period, although clearly offensive, did not give rise to a genuine issue of material fact as to whether conduct was severely pervasive.). The comments themselves were not severe as they referenced Plaintiff's age, but were not accompanied by physical threats or humiliation. Subjectively, Plaintiff may have been humiliated at having to defend her mileage reports, but Wilson's investigation was not clearly age-biased. Furthermore, most of the comments Wilson made were not even directly aimed at Plaintiff. Wilson's comments do not present a sufficiently severe or pervasive environment and would be considered merely offensive. *See*, *e.g., Black v. Zaring Homes, Inc.*, 104 F.3d 822 (6th Cir.1997)

17

(reversing jury verdict for plaintiff who alleged she was subjected to a hostile work environment; finding on appeal that despite allegations the plaintiff was subjected to various discriminatory comments and sexual innuendo at bi-weekly meetings from July to October 1993, told she "was paid great money for a woman," and referred to as a "broad," the defendant was entitled to judgment as a matter of law because under the totality of the circumstances the comments were merely offensive and were therefore insufficient to support the jury verdict, and deeming important the fact "most of the comments were not directed at plaintiff"); *Myers v. Todd's Hydroseeding & Landscape, LLC*, 368 F.Supp.2d 808, 810-11 (E.D. Mich. 2005) (finding insufficient circumstances to qualify as severe or pervasive despite sexual jokes, touching of the plaintiff on shoulders, comments about the plaintiff's figure, and assuming employee asked the plaintiff to have sexual relations with him); *Day v. Krystal Co.*, 471 F.Supp.2d 874, 888 (E.D.Tenn. 2007) (granting summary judgment for employer on the plaintiff's hostile work environment claim, "[a]lthough Plaintiff found the comments to be inappropriate and unprofessional, the comments were not frequent, did not involve physically threatening or humiliating conduct, and most of the comments were not directed towards Plaintiff."). As in *Black*, many of Wilson's comments were not aimed at Plaintiff. Although Plaintiff overheard Wilson speaking on the phone saying the "store needed a younger, fresher management style," the comment was not directed to her. Wilson was at a meeting and speaking to a group of people not just to Plaintiff when he said "there are a few of you that have been around too long and just need to move on." These circumstances do not support Plaintiff's claim the harassment was severe or pervasive.

Plaintiff has not presented evidence the comments and circumstances surrounding Wilson's management unreasonably interfered with Plaintiff's work performance. Plaintiff continued in her

18

position up through her termination on March 24, 2009. Although she had to explain her mileage reports and report discriminatory comments by Wilson, these additional impositions do not constitute an unreasonable interference with her job performance. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not create that unreasonable interference").

Although Plaintiff, found the comments and investigation by Wilson offensive, making all inferences in her favor, the overall conduct is not severe or pervasive enough to allow a reasonable jury to find in her favor. Because Plaintiff has failed to establish a prima facie case, summary judgment is appropriate for Plaintiff's hostile work environment claim.

## V. CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendant's motion for summary judgment as to Plaintiff's claims for wrongful termination and retaliation and **GRANT** Defendant's motion for summary judgment as to Plaintiff's claim for hostile work environment (Court File No. 30). Defendant's motion to strike Robin Mayo's affidavit will be **GRANTED IN PART** as to paragraphs 2, 7, and 8 and **DENIED IN PART** as to the remaining paragraphs.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

19